# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| |
|---|
| GEORGE CATER and CHERYL CATER, Plaintiffs, v. STARBUCKS CORPORATION, et al., Defendants. |

Civil Action No. 07-2660

## MEMORANDUM

August 10, 2010                                                                                               Pollak, J.

Plaintiffs George Cater and Cheryl Cater filed suit in the Court of Common Pleas of Philadelphia County, alleging negligence and loss of consortium arising from a fall on the allegedly icy Starbucks parking lot (docket no. 1). The defendants were Starbucks and Paul Mastropieri, the owner of the parking lot, who leased to Starbucks the building in which Starbucks was located and which was adjacent to the parking lot (docket no. 1).

On grounds of diversity defendants removed the suit to this court (docket no. 1). In its answer, Starbucks brought a cross-claim for indemnification and breach of contract against Mastropieri (docket no. 3). Starbucks then joined as third-party defendants the Beer Yard, which shared the parking lot with Starbucks, and Anthony Marchesani, who plowed the parking lot (docket nos. 9 & 10). Marchesani then brought a claim for

indemnification against Mastropieri (docket no. 20). The Caters, in an amended complaint (docket no. 30), then brought claims against the third-party defendants, Marchesani and the Beer Yard.

Several motions for summary judgment have been filed, including: Starbucks' motion for summary judgment against the Caters, based on an open, obvious, and known condition/assumption of risk (docket no. 89); Starbucks' motion for summary judgment against the Caters and Mastropieri, based on a lack of duty and for indemnification (docket no. 90); Mastropieri's motion for summary judgment on all claims against him (docket no. 88), Beer Yard's motion for summary judgment on all claims against it (docket no. 86); and Marchesani's motion for summary judgment on all claims against him (docket no. 87).

This memorandum and accompanying order address Starbucks' motion for summary judgment against Mastropieri and the Caters, based upon a lack of duty and right to indemnification (docket no. 90). The Caters and third-party defendant Mastropieri have responded (docket nos. 95 & 99). Starbucks has replied (docket no. 111). The motion is now ripe for disposition.

I.  **Facts**

On February 15, 2006, Cheryl Cater and her husband, George, drove to the Starbucks at 218 East Lancaster Avenue. Starbucks Exh. I-1, at 64-65 (Depo. of Cheryl Cater). The night before there was "an icy rain." *Id.* at 77. The Caters observed a

woman, Libby Schwartz, lying in the middle of the parking lot. *Id.* at 56. The Caters stopped their car and George carried Schwartz to the back door of the Starbucks. *Id.* at 74.

As she got out of her car, Cheryl Cater was concerned about her ability to walk across the parking lot due to the ice. *Id.* at 81. Cheryl Cater went inside the Starbucks to where Schwartz and her husband were. *Id.* at 82. Schwartz asked Cheryl Cater to retrieve Schwartz's purse from her car, because it contained her medical information. *Id.* at 86-87. In trying to reach Schwartz's car, Cheryl Cater slipped and fell in the area where Schwartz's car was located. *Id.* at 92-93.

In 1996, Starbucks and Mastropieri entered into a commercial lease for the Starbucks property, which is located at 218 East Lancaster Avenue, Wayne, Pennsylvania. Starbucks Exh. C. The commercial lease defines the "premises" leased as "the building containing approximately 4,080 square feet of floor area." Starbucks Exh. C at ¶ 1.

The lease provides that, except for certain repairs specified by the prior section which are not at issue, the "Landlord shall pay for and make all other repairs and/or replacements to the Premises and the Building (including Common Areas as defined below)." Starbucks Exh. C at ¶ 6.2. "Common Areas" is defined as "all portions of the Property (excluding the Premises and two (2) other premises identified as [the building now leased by the Beer Yard and the Kay & Sons Premises]." Starbucks Exh. C at ¶ 12.1. The parking lot is a common area. The lease further states that:

> Except for repairs and replacements to the Premises that Tenant must make under Section 6.1, Landlord shall pay for and make all other repairs and/or replacements to the Premises and the Building (including Common Areas as defined below). Landlord shall, at its sole cost and expense, make the repairs and replacements necessary to maintain the Building in a sound condition comparable to other similar buildings in the Wayne metropolitan area. Such repairs, replacements, and maintenance shall include the upkeep of the roof, foundation, exterior walls, interior structural walls, and all structural components of the Building and Property and structural and non-structural components of the Common Areas pursuant to Section 12.
> . . .
> Tenant may at its option, undertake such repairs and deduct the cost thereof from the installments of Base Rent and Estimated Monthly Rent next falling due. Notwithstanding the foregoing, in the event of an emergency, Tenant may give Landlord such shorter notice as is practicable under the circumstances, and if Landlord fails to make such repairs immediately, Tenant may immediately undertake such repairs and deduct the cost thereof from the installments of Base Rent and all other charges next falling due.

Starbucks Exh. C at ¶ 6.2. Under Section 12, Mastropieri is to pay the operating expenses– "expenses actually paid in any calender year directly attributable to maintaining, operating and providing services to and for the Common Area." Starbucks Exh. C at ¶ 12.1-12.5. The lease specifies that Mastropieri would make such repairs promptly but "in any event within thirty (30) days" after Starbucks provided notice of the need for repairs. Starbucks Exh. C at ¶ 6.2.

The lease further states, in a section identified by the heading "Indemnification by Landlord," that:

> Landlord shall defend, indemnify, and hold Tenant and Tenant's agents, officers, directors, employees, and contractors harmless against and from any and all injuries, costs, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, and demands of any kind or nature (including reasonable attorneys' fees) by or on behalf of any person, entity, or governmental authority

4

occasioned by or arising out of (a) injuries occurring in the Common Areas or any other portion of the Building outside the Premises; (b) any intentional act, or negligence of the Landlord or Landlord's agents, employees, or independent contractors other than injuries caused by Tenant's negligence or intentional conduct; (c) any breach or default in the performance of any obligation on Landlord's part to be performed under this lease; or (d) the failure of any representation or warranty made by Landlord herein to be true when made. This indemnity does not include the intentional or negligent acts or omissions of Tenant or its agents, officers, contractors or employees.

Starbucks Exh. C at ¶ 7.5.

The lease requires Starbucks to maintain "[p]ersonal injury, bodily injury and property damage insurance, naming Landlord as an additional insured . . . against liability arising out of Tenant's use, occupancy, or maintenance of the Building." Starbucks Exh. C at ¶ 7.1.1. Additionally, Starbucks is only required to obtain "[c]ommercial property form insurance" covering the "building." Starbucks Exh. C at ¶ 7.1.2.

The parties do not dispute that, since 2005, Starbucks has paid Anthony Marchesani to remove snow from the parking lot. *See* Mastropieri's Exh. A, at 13-14 (Depo. of Marchesani). Additionally, David Pogach, Starbucks' facility manager, testified in his deposition that Starbucks paid for snow removal solely because it viewed Mastropieri as failing to live up to his obligations under the lease. Starbucks' Exh. J-1, at 24-25. However, Kevin Chang, who worked for Pogach and had the responsibility of interpreting leases, stated in an email that snow removal was not included in the landlord's responsibilities and Starbucks had to arrange for snow removal. Mastropieri's Exh. B, at 114-16 (Depo. of Pogach) & Exh. C.

Additionally, Pogach testified that Mastropieri had originally arranged for snow and ice removal and Starbucks did "nothing" but then Mastropieri stopped arranging for snow and ice removal. Starbucks' Exh. J-1, at 25. In contrast, Mastropieri testified at his deposition that he never made arrangements for snow removal. Mastropieri's Exh. D, at 21.

## II.     Analysis

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006). Facts are material if they "bear on an essential element of the plaintiff's claim." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)). Further, there is a genuine issue of material fact if "a reasonable jury could find in favor of the nonmoving party." *Id.*

A party seeking summary judgment carries the initial burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this instance, the non-moving party would bear the burden of proof at trial. Consequently, the moving party must show that the non-moving party cannot support her

6

case with the evidence in the record. *Celotex*, 477 U.S. at 325. To rebut, the non-moving party must identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Starbucks seeks summary judgment by arguing that it owed no duty to the Caters, as defendant Mastropieri allegedly bore the responsibility for repairs and maintenance, including snow removal, and by arguing that the lease's indemnity clause applies. Starbucks also claims that Pennsylvania common law places a duty to keep common areas clear solely on a landlord, when the landlord rents to multiple tenants sharing common areas. Mastropieri responds that the lease fails to define "maintenance" and the parties' course of dealing indicates that Starbucks was responsible for snow removal.

**A.     The Lease is Unclear as to Which Party had the Duty to Remove Snow and Ice**

Pennsylvania law applies in interpreting the lease since the lease states "[t]he Lease shall be governed by the laws of the state or province where the Premise is located." Starbucks Exh. C at ¶ 23.12. "The fundamental rule in interpreting a contract is to ascertain and give effect to the intent of the contracting parties." *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005) (citations omitted). "When

7

contractual language is clear and unequivocal, its meaning must be determined by its contents alone." *Id.*

I find that summary judgment cannot be granted on the basis of the lease between Starbucks and Mastropieri, as the lease's terms are unclear and disputed issues of material fact exist regarding the course of performance subsequent to execution of the lease.

First, the indemnity clause does not resolve the issue of Starbucks' liability. The clause indemnifying Starbucks would apply to "injuries occurring in the Common Areas or any other portion of the Building outside the Premises," which would include the parking lot. However, the provision exempts "the intentional or negligent acts or omissions of Tenant or its agents, officers, contractors or employees." Thus, the indemnity provision does not absolve Starbucks of liability, because if Starbucks owed the Caters a duty, Starbucks or its employees may have committed a negligent act that would be outside the scope of the indemnity clause, such as failing to clear the ice or failing to warn Cheryl Cater.

Similarly, the fact that the lease required Starbucks to purchase commercial property insurance that covered only the building does not imply that it was not responsible for injuries in the parking lot. Starbucks was required to purchase liability insurance "arising out of" its use of the building. Since injuries could arise out of its use of the building while not actually occurring in the leased premises, the insurance provisions do not aid in interpretation of the lease.

Whether Starbucks or Mastropieri assumed a contractual duty to keep the parking

8

lot clear of ice or snow depends on whether Mastropieri's duty to undertake "repairs, replacements, and maintenance of common areas" includes the duty to keep the parking lot free of ice and snow. The contract does not define the scope of the duties of "repair[], replacement[], and maintenance" that are required of Mastropieri. The contract does provide a list of exemplars: "the upkeep of the roof, foundation, exterior walls, interior structural walls, and all structural components of the Building and Property and structural and non-structural components of the Common Areas pursuant to Section 12." Starbucks Exh. C at ¶ 6.2.

The removal of snow and ice cannot be described as a "repair" or a "replacement," so the issue will turn on whether the duty of "maintenance" includes snow and ice removal. The common understanding of the word "maintenance" could or could not include snow removal. The relevant definition in Black's Law Dictionary defines "maintenance" as "care and work put into property to keep it operating and productive; general repair and upkeep." Black's Law Dictionary (8th Ed. 2004). The list of exemplars provided in the lease similarly speaks of "upkeep" of generally structural components. "Maintenance" arguably could or could not include snow removal.

Other provisions of the lease do not resolve the meaning of the term "maintenance," and in fact lend some support to finding "maintenance" does not include providing snow and ice removal. In a separate provision describing what Mastropieri can recover for operating expenses related to the common areas, the lease uses the term "maintaining" as separate from "operating and providing services." *See* Starbucks Exh. C

9

at ¶ 12.1 (defining operating expenses as "expenses actually paid in any calender year directly attributable to maintaining, operating and providing services to and for the Common Area."). If "maintenance" differs from "providing services" and if Mastropieri is not under a duty to provide services–although he can recover the costs if he elects to provide such service–Mastropieri may not be under a duty to provide snow and ice removal, which is arguably a service. Thus, the terms defining the duties of Mastropieri with respect to snow and ice removal in the common areas are unclear.

If a contract term is unclear, Pennsylvania courts have stated that "subsequent conduct of the parties, course of performance, is an aid to interpretation." *Herzog v. Herzog*, 887 A.2d 313, 316 (Pa. Super. Ct. 2005). "If the parties to a contract have started to perform the contract and their performance manifests a common manifestation of their understanding of the prior expression of agreement, this evidence will be given great weight in determining the meaning attributed to their expressions." *Id.* (quoting John Edward Murray, Jr., Murray on Contacts, § 88F, at 424 (3rd Ed. 1990)).

Disputed material issues of fact prevent me from resolving whether the course of performance evidences a "common manifestation of their understanding." The parties dispute both why Starbucks decided to pay a snow plow service and whether Mastropieri had paid for a snow plow service in years prior. Given this dispute of fact, and the lack of clarity in the terms of the lease, summary judgment based on contractual indemnification is inappropriate.

**B.      Disputed Issues of Material Fact Bar a Determination Regarding the Common Law Rule Allocating Liability Between a Landlord and Tenant**

Starbucks also argues that it is entitled to indemnity as a matter of common law. As a general matter under Pennsylvania law:

> where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common [areas] which are to be used by business invitees of the various tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases.

*Leary v. Lawrence Sales Corp.*, 275 A.2d 32, 34 (Pa. 1971) (citing *Lopez v. Gukenback*, 137 A.2d 771 (1958)). Thus, if Mastropieri retained possession and control over the parking lot, the Caters could only pursue a suit against him, rather than the tenants, Starbucks and the Beer Yard. *Id*.

However, Pennsylvania has adopted § 323 of the Restatement (Second) of Torts which finds:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*DeJesus v. Liberty Mut. Ins. Co.*, 223 A.2d 849, 850 (Pa. 1966) (quoting Restatement (Second) Torts § 323 (1965)). A party can gratuitously assume a duty, even if a general common-law rule would have found there to be no duty. *See Feld v. Merriam*, 485 A.2d

11

742, 746 (Pa. 1984) ("[A]lthough there is a general rule against holding a person liable for the criminal conduct of another . . . there is also an exception to that rule, i.e., where a party assumes a duty, whether gratuitously or for consideration, and so negligently performs that duty that another suffers damage.").

This case involves a disputed material issue of fact that prevents the grant of summary judgment based on the above-stated rule assigning the duty of keeping common areas clear to the landlord when leasing to multiple tenants. As Starbucks points out in its opposition to the Beer Yard's motion for summary judgment, "a defendant may be liable to an allegedly injured plaintiff when the defendant assumes the responsibility of a service, the negligent performance of which results in the plaintiff's harm." Starbucks Corp.'s Mem. of Law in Resp. & Opp'n to the Mot. for Summ. J. of Defendant the Beer Yard (Docket No. 100), at 6 (citing *Western Union Tel. Co. v. N. C. Direnzi, Inc.* 442 F. Supp. 1, 3, 5 (E.D. Pa. 1977)). "The standard required in the performance of a duty created by affirmative conduct is reasonable care under all of the circumstances, and the duty may be terminated when circumstances permit by giving notice of the intention to terminate and disclosing what remains to be done." *Pirocchi v. Liberty Mut. Ins. Co.*, 365 F. Supp. 277, 281 (E.D. Pa. 1973).

As discussed above, there is a dispute over to what extent Starbucks took upon itself the duty of keeping the parking lot clear of ice and snow. It is not disputed that Starbucks hired someone to plow the parking lot, while the parties dispute whether Starbucks voluntarily undertook this obligation or did so under protest. Starbucks having

arranged for snow removal may have assumed the duty to continue to do so by affirmative conduct, and thus Starbucks is not entitled to summary judgment on this ground.

III. **Conclusion**

For the foregoing reasons, Starbucks' motion for summary judgment based upon a lack of duty and right to indemnification will be denied. An appropriate order accompanies this memorandum.