## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GEORGE CATER and CHERYL CATER,<br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION, et al.,<br>Defendants. | Civil Action No. 07-2660 |

**MEMORANDUM**

August 10, 2010                                                               Pollak, J.

Plaintiffs George Cater and Cheryl Cater filed suit in the Court of Common Pleas of Philadelphia County, alleging negligence and loss of consortium arising from a fall on the allegedly icy Starbucks parking lot (docket no. 1). The defendants were Starbucks and Paul Mastropieri, the owner of the parking lot, who leased to Starbucks the building in which Starbucks was located and which was adjacent to the parking lot (docket no. 1).

On grounds of diversity defendants removed the suit to this court (docket no. 1). In its answer, Starbucks brought a cross-claim for indemnification and breach of contract against Mastropieri (docket no. 3). Starbucks then joined as third-party defendants the Beer Yard, which shared the parking lot with Starbucks, and Anthony Marchesani, who

plowed the parking lot (docket nos. 9 & 10). Marchesani then brought a claim for indemnification against Mastropieri (docket no. 20). The Caters, in an amended complaint (docket no. 30), then brought claims against the third-party defendants, Marchesani and the Beer Yard.

Several motions for summary judgment have been filed, including: Starbucks' motion for summary judgment against the Caters, based on an open, obvious, and known condition/assumption of risk (docket no. 89); Starbucks' motion for summary judgment against the Caters and Mastropieri, based on a lack of duty and for indemnification (docket no. 90); Mastropieri's motion for summary judgment on all claims against him (docket no. 88), Beer Yard's motion for summary judgment on all claims against it (docket no. 86); and Marchesani's motion for summary judgment on all claims against him (docket no. 87).

This memorandum and accompanying order address Starbucks' motion for summary judgment against the Caters based upon an open, obvious, and known condition and the doctrine of assumption of risk (docket no. 89), to which the Caters have responded in opposition (docket no. 93) and the Beer Yard has responded in support (docket no. 104). Starbucks has replied (docket no. 110). The motion is now ripe for disposition.

I.    **Facts**

Cheryl Cater alleges that she fell in the parking lot located at 218 East Lancaster

Avenue, Wayne, Pennsylvania. The property is owned by Mastropieri. *See* Starbucks

Exh. B, at 11-12 (Depo. of Mastropieri). The property consists of a circular building

leased to Starbucks and a rectangular building leased to the Beer Yard, a retail store and

beverage distributor. *See* Starbucks Exh. C & D (leases of Starbucks and the Beer Yard,

respectively). The property includes a common parking lot and driveway between the

two buildings. *See* Starbucks Exh. E (diagram of property).

On February 15, 2006, Cheryl Cater and her husband, George, drove to the

Starbucks at 218 East Lancaster Avenue. Starbucks Exh. J-1, at 64-65 (Depo. of Cheryl

Cater). The night before there was "an icy rain." *Id.* at 77. Cheryl Cater described the

ice as "all across the entire parking lot" and "continuous throughout the entire yard or

lot." *Id.* at 77, 80. The Caters observed a woman, Libby Schwartz, lying in the middle of

the parking lot. *Id.* at 56. The Caters stopped their car and George carried Schwartz to

the back door of the Starbucks. *Id.* at 74.

As she got out of her car, Cherly Cater was concerned about her ability to walk

across the parking lot due to the ice. *Id.* at 81. Cheryl Cater went inside the Starbucks to

where Schwartz and her husband were. *Id.* at 82. Cheryl Cater stayed with Schwartz

until an EMT arrived. *Id.* at 83-84. At that point, Schwartz asked Cheryl Cater to retrieve

Schwartz's purse from her car, because it contained her medical information. *Id.* at 86-

87. To reach Schwartz's car, Cheryl Cater had to again cross the parking lot where any

path she chose to take would be icy. *Id.* at 87-89. In trying to reach Schwartz's car,

Cheryl Cater slipped and fell in the area where Schwartz's car was located. *Id.* at 92-93.

Cater alleges that this fall was due to Starbucks' negligence and is suing to recover for

her personal injuries. Her husband claims damages for loss of consortium. Starbucks has

brought this motion for summary judgment alleging that the doctrines of an open,

obvious, and known condition and assumption of risk prevent the Caters from

establishing its liability.

## II.     Analysis

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard*

*Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006). Facts are material if they "bear

on an essential element of the plaintiff's claim." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337

(3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)). Further,

there is a genuine issue of material fact if "a reasonable jury could find in favor of the

nonmoving party." *Id.*

A party seeking summary judgment carries the initial burden of informing the

court of the basis for its motion and identifying the portions of the record that show that

there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). In this instance, the non-moving party would bear the burden of proof at trial.

Consequently, the moving party must show that the Caters cannot support their case with the evidence in the record. *Celotex*, 477 U.S. at 325. To rebut, the Caters must identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under Pennsylvania law, the doctrine of assumption of risk must be examined when determining whether the defendant owed plaintiff a duty.[1] *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224-25 (3d Cir. 1997). A defendant owes no duty if the plaintiff "'discover[ed] dangerous conditions which [were] both obvious and avoidable, and

---

[1] Starbucks' motion appears to refer to the doctrine of open, obvious, and known conditions as a separate basis for summary judgment from the doctrine of assumption of risk. However, the Pennsylvania Supreme Court, by incorporating the doctrine of assumption of risk into the analysis of duty, has made clear that the two doctrines are in fact the same. In *Carrender v. Fitterer*, 469 A.2d 120 (Pa. 1983), the Pennsylvania Supreme Court stated:

> Appellee misperceives the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable to his invitees for obvious dangers. When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Id.* at 125 (citations omitted).

nevertheless proceed[ed] voluntarily to encounter them.'"  *Id.* at 226 (quoting *Carrender*

*v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983)) (alterations in original).  Assumption of risk is

a question for the jury "unless reasonable minds could not disagree."  *Kaplan*, 126 F.3d at

225 (citing *Carrender*, 469 A.2d at 124).

In *Kaplan*, the Third Circuit, applying Pennsylvania's assumption of risk case law,

found that a plaintiff did not proceed voluntarily when there is "no reasonable

alternative."  *Kaplan*, 126 F.3d at 227.  The plaintiff in Kaplan boarded a SEPTA bus by

climbing over an icy mound of snow, which a fellow passenger had warned her was slick.

*Id.*  The Third Circuit found that reasonable minds could disagree about whether she had

a reasonable alternative–namely, walking down the block to where a path into the street

was clear and then "walk[ing] a distance back towards the bus stop in an icy street with

traffic."  *Id.*

Here, Starbucks argues that "the evidence does not support the conclusion that

Mrs. Cater was obligated to leave the Starbucks to retrieve Mrs. Schwartz's insurance

information or that leaving was anything other than a choice made of her own free will."

Starbucks further suggest that Cater "had safe alternatives to walking across the parking

lot, including not patronizing the coffee shop in the first instance, and the alternative of

remaining in the Starbucks once she arrived."

I find Starbucks' arguments unpersuasive.  Reasonable minds could disagree

whether Cheryl Cater had reasonable alternatives to crossing the icy parking lot once

again.  The option of remaining in the Starbucks for an indeterminate amount of time may

not have been a reasonable alternative.  Cheryl Cater arguably could have simply chosen

not to patronize the Starbucks, but the plaintiff in *Kaplan* could have similarly chosen not

to take the bus, or not to leave her home following a snowstorm.  Reasonable minds could

disagree whether it is a viable alternative to stop frequenting businesses in the days

following winter storms.  Additionally, reasonable minds could consider that Cheryl Cater

did not have a reasonable alternative, given that she crossed the parking lot in order to aid

an injured person.

Cases cited by Starbucks do not contradict the holding of *Kaplan* or present

circumstances similar to those at bar because the plaintiffs in those cases had clear

alternatives available to them.  In *Carrender*, the plaintiff had parked on a sheet of ice

despite being "aware that several convenient parking spaces free of ice were available."

*Carrender*, 469 A.2d at 122.  In *Fruedenvoll v. Stavros*, 49 Pa. D & C. 4th 328 (Pa. Ct.

Com. Pl. (2000), the plaintiff was found to have assumed the risk of slipping when she

entered a restaurant despite the entrance being icy and then slipped on the way out.  The

Court of Common Pleas of Monroe County found that she "face[d] the risk voluntarily"

as she "did not have to enter [the restaurant] for employment purposes . . . her presence at

the pizzeria was purely a social one." *Id*. at 338.  The *Fruedenvoll* plaintiff "consumed

two shots of brandy and approximately one bottle of beer during her 45-minute stay inside

the pizzeria." *Id*. at 334.  Unlike *Fruedenvoll*, Cater neither consumed alcohol nor

crossed the parking lot for a solely social purpose; a reasonable mind may consider

coming to the aid of an injured person a purpose of more value than pizza and drinks.

**III.    Conclusion**

As reasonable minds can disagree as to whether Cheryl Cater had a reasonable alternative to stopping at the Starbucks to aid an injured person and then crossing an icy parking lot to retrieve that person's medical information, I must deny Starbucks' motion for summary judgment against the Caters based on an open, obvious, and known condition and the doctrine of assumption of risk.  An appropriate order accompanies this memorandum.