IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE CATER and CHERYL CATER, Plaintiffs, <br><br> v. <br><br> STARBUCKS CORPORATION, et al., Defendants. | Civil Action No. 07-2660 |

# MEMORANDUM

August 10, 2010                                                                 Pollak, J.

Plaintiffs George Cater and Cheryl Cater filed suit in the Court of Common Pleas of Philadelphia County, alleging negligence and loss of consortium arising from a fall on the allegedly icy Starbucks parking lot (docket no. 1). The defendants were Starbucks and Paul Mastropieri, the owner of the parking lot, who leased to Starbucks the building in which Starbucks was located and which was adjacent to the parking lot (docket no. 1).

On grounds of diversity defendants removed the suit to this court (docket no. 1). In its answer, Starbucks brought a cross-claim for indemnification and breach of contract against Mastropieri (docket no. 3). Starbucks then joined as third-party defendants the Beer Yard, which shared the parking lot with Starbucks, and Anthony Marchesani, who plowed the parking lot (docket nos. 9 & 10). Marchesani then brought a claim for

1

indemnification against Mastropieri (docket no. 20).  The Caters, in an amended complaint (docket no. 30), then brought claims against the third-party defendants, Marchesani and the Beer Yard.

Several motions for summary judgment have been filed, including:  Starbucks' motion for summary judgment against the Caters, based on an open, obvious, and known condition/assumption of risk (docket no. 89); Starbucks' motion for summary judgment against the Caters and Mastropieri, based on a lack of duty and for indemnification (docket no. 90); Mastropieri's motion for summary judgment on all claims against him (docket no. 88), Beer Yard's motion for summary judgment on all claims against it (docket no. 86); and Marchesani's motion for summary judgment on all claims against him (docket no. 87).

The present memorandum and accompanying order address Paul Mastropieri's motion for summary judgment (docket no. 88), to which the plaintiffs (docket no. 97) and Starbucks (docket no. 102) have responded in opposition.  Mastropieri has replied (docket no. 108-09).  The motion is now ripe for disposition.

## I.   Facts

Cheryl Cater alleges that she fell in the parking lot located at 218 East Lancaster Avenue, Wayne, Pennsylvania.  The property, owned by Mastropieri, consists of a circular building leased to Starbucks and a rectangular building leased to the Beer Yard, a retail store and beverage distributor.   The property includes a common parking lot and

driveway between the two buildings.

In 1996, Starbucks and Mastropieri entered into a commercial lease for the circular building located at 218 East Lancaster Avenue. Starbucks Exh. C. The commercial lease defines the "premises" leased as "the building containing approximately 4,080 square feet of floor area." Starbucks' Lease at ¶ 1.[1]

The lease specifies that, except for certain repairs specified by the prior section which are not at issue, the "Landlord shall pay for and make all other repairs and/or replacements to the Premises and the Building (including Common Areas as defined below)." *Id.* at ¶ 6.2. "Common Areas" is defined as "all portions of the Property (excluding the Premises and two (2) other premises identified as [the building now leased by the Beer Yard and the Kay & Sons Premises])." *Id.* at ¶ 12.1. The parking lot is a common area. The lease further states that:

> Except for repairs and replacements to the Premises that Tenant must make under Section 6.1, Landlord shall pay for and make all other repairs and/or replacements to the Premises and the Building (including Common Areas as defined below). Landlord shall, at its sole cost and expense, make the repairs and replacements necessary to maintain the Building in a sound condition comparable to other similar buildings in the Wayne metropolitan area. Such repairs, replacements, and maintenance shall include the upkeep of the roof, foundation, exterior walls, interior structural walls, and all structural components of the Building and Property and structural and non-structural components of the Common Areas pursuant to Section 12.
> . . .
> Tenant may at its option, undertake such repairs and deduct the cost thereof from

---

[1] The lease can be found as exhibit C to Starbucks' motion for summary judgment based on a lack of duty and right to indemnification (docket no. 90).

3

the installments of Base Rent and Estimated Monthly Rent next falling due. Notwithstanding the foregoing, in the event of an emergency, Tenant may give Landlord such shorter notice as is practicable under the circumstances, and if Landlord fails to make such repairs immediately, Tenant may immediately undertake such repairs and deduct the cost thereof from the installments of Base Rent and all other charges next falling due.

*Id.* at ¶ 6.2. Under Section 12, Mastropieri is to pay the operating expenses– "expenses actually paid in any calendar year directly attributable to maintaining, operating and providing services to and for the Common Area." *Id.* at ¶ 12.1-12.5.

The parties do not dispute that since 2005, Starbucks has paid Anthony Marchesani to remove snow from the parking lot. *See* Mastropieri's Exh. A, at 13-14 (Depo. of Marchesani). David Pogach, Starbucks' facility manager, testified in his deposition that Starbucks has paid for snow removal solely because it viewed Mastropieri as failing to live up to his obligations under the lease. Starbucks' Exh. J-1, at 24-25. However, Kevin Chang, who worked for Pogach and had the responsibility of interpreting leases, stated in an email that snow removal was not included in the landlord's responsibilities and Starbucks had to arrange for snow removal. *See* Deposition of David Pogach, at 114-16 & email attached as Exh. C to Mastropieri's opposition to Starbucks' motion for summary judgment based upon a lack of duty and right to indemnification (docket no. 99).

Pogach also testified that Mastropieri had originally arranged for snow and ice removal and Starbucks did "nothing" but then Mastropieri stopped arranging for snow and ice removal. Deposition of David Pogach, at 25. In contrast, Mastropieri testified at his deposition that he never made arrangements for snow removal. Deposition of Paul

4

Mastropieri, at 21.[2]

On February 15, 2006, Cheryl Cater and her husband, George, drove to the Starbucks at 218 East Lancaster Avenue. Deposition of Cheryl Cater, at 64-65.[3] The night before there was "an icy rain." *Id.* at 77. Cheryl Cater described the ice as "all across the entire parking lot" and "continuous throughout the entire yard or lot." *Id.* at 77, 80. The Caters observed a woman, Libby Schwartz, lying in the middle of the parking lot. *Id.* at 56. The Caters stopped their car and George carried Schwartz to the back door of the Starbucks. *Id.* at 74.

As she got out of her car, Cherly Cater was concerned about her ability to walk across the parking lot due to the ice. *Id.* at 81. Cheryl Cater went inside the Starbucks to where Schwartz and her husband were. *Id.* at 82. Cheryl Cater stayed with Schwartz until an EMT arrived. *Id.* at 83-84. At that point, Schwartz asked Cheryl Cater to retrieve Schwartz's purse from her car, because it contained her medical information. *Id.* at 86-87. To reach Schwartz's car, Cheryl Cater had to again cross the parking lot where any path she chose to take would be icy. *Id.* at 87-89. In trying to reach Schwartz's car, Cheryl Cater slipped and fell in the area where Schwartz's car was located. *Id.* at 92-93. Cater alleges that this fall was due to Starbucks' and Mastropieri's negligence, *inter alia*,

---

[2] The deposition of Paul Mastropieri can be found attached as exhibit D to his opposition to Starbucks' motion for summary judgment based upon a lack of duty and right to indemnification (docket no. 99).

[3] The deposition is available as exhibit J-1 attached to Starbucks' motion for summary judgment based upon an open, obvious, and known condition (docket no. 89).

5

and is suing to recover for her personal injuries.

David Pogach, Starbucks' facilities service manager, testified in his deposition that the parking lot had a drainage problem that would cause water to pool up and freeze. Deposition of David Pogach, at 29-30.[4] Mark Sauerbrey, an employee of the Beer Yard, testified in his deposition that when "[t]he landlord repaved the back portion of the parking lot" a runoff problem began and puddles would develop. Deposition of Mark Sauerbrey, at 43-46.[5] Matthew Guyer, the proprietor of the Beer Yard, similarly, stated that there was a problem with water pooling and freezing. Deposition of Matthew Guyer, at 35-37.[6]

## II. Analysis

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006). Facts are material if they "bear

---

[4] The deposition of David Pogach can be found as exhibit A-1 to Starbucks' opposition to the summary judgment motion of Paul Mastropieri (docket no. 102).

[5] The deposition of Mark Sauerbrey can be found as exhibit B-1 attached to Starbucks' opposition to the summary judgment motion of the Beer Yard (docket no. 100).

[6] The deposition of Matthew Guyer can be found as exhibit A-1 attached to Starbucks' reply to Mastropieri's opposition to their motion for summary judgment based on a lack of duty and right to indemnification (docket no. 111).

on an essential element of the plaintiff's claim." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)). Further, there is a genuine issue of material fact if "a reasonable jury could find in favor of the nonmoving party." *Id.*

A party seeking summary judgment carries the initial burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this instance, the non-moving party would bear the burden of proof at trial. Consequently, the moving party must show that the non-moving party cannot support her case with the evidence in the record. *Celotex*, 477 U.S. at 325. To rebut, the non-moving party must identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

> **A.  A Genuine Issue of Material Fact Prevents Summary Judgment based on the "Hills and Ridges" Doctrine, as the Condition may not have been an Entirely Natural Occurrence**

Mastropieri argues that the "hills and ridges" doctrine precludes the plaintiffs'

7

recovery. Under Pennsylvania law, when the plaintiff claims negligence "in permitting the accumulation of snow or ice," the plaintiff must show according to the "hills and ridges" doctrine:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. Absent proof of all such facts, plaintiff has no basis for recovery.

*Rinaldi v. Levine*, 176 A.2d 623, 625-26 (Pa. 1962) (citations omitted). The doctrine originally applied to public walks, but has been extended "to parking lots and private walkways, and has been applied to business invitees." *Heasley v. Carter Lumber*, 843 A.2d 1274, 1277 (Pa. Super. Ct. 2004) (citations omitted). "[A] prerequisite to the application of the 'hills and ridges' doctrine is a finding of generally slippery conditions as opposed to isolated icy patches." *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1088 (Pa. Super. Ct. 1997). However, the doctrine does not apply when the ice or snow was the result of "human intervention" and not the result of "an *entirely natural* accumulation." *Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 527 (Pa. Super. Ct. 2006) (emphasis in original). Furthermore, proof of hills and ridge is not required "when an icy condition is caused by the defendant's neglect, as where [the defendant] maintains a defective hydrant, water pipe, drain, or spigot." *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. Ct. 1975) (citing *Ward v. Pittsburgh*, 44 A.2d 553 (Pa. 1945)).

In *Harvey v. Rouse Chamberlin*, *Ltd.*, 901 A.2d 523 (Pa. Super. Ct. 2006), the

Superior Court refused to apply the doctrine to an accident caused by a sheet of black ice that formed after defendant had plowed a road but possibly failed to salt. *Id.* at 527. The court found that the plowing of the road and subsequent failure to salt constituted sufficient human interaction to make the doctrine inapplicable. *Id*. at 527-28.

A genuine issue of material fact exists as to whether the icy conditions in the parking lot were the result of natural conditions. As stated above, both David Pogach and Mark Sauerbrey testified at their depositions that there was a problem with the design of the parking lot's drainage. Sauerbrey attributed the problem to Mastropieri's repaving the lot prior to the incident, which resulted in the pooling and freezing of runoff. As the accumulation of ice in the parking lot may have been created or worsened by Mastropieri's actions, the "hills and ridges" doctrine may not apply.

**B.    Because Material Facts are in Dispute, a Jury or Other Fact-Finder, Must Determine Whether Cheryl Cater Assumed the Risk of Falling**

Mastropieri, like Starbucks in one of its motion for summary judgment, argues that, as a matter of law, Cheryl Cater assumed the risk of falling by choosing to walk across the empty parking lot. I reject Mastropieri's argument on these grounds, as I do Starbucks' argument, because genuine issues of material fact exist as to whether Cheryl Cater had a reasonable alternative available to her.

Under Pennsylvania law, the doctrine of assumption of risk must be examined when determining whether the defendant owed plaintiff a duty. *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224-25 (3d Cir. 1997). A defendant owes no duty if the plaintiff

"'discover[ed] dangerous conditions which [were] both obvious and avoidable, and nevertheless proceed[ed] voluntarily to encounter them.'" *Id.* at 226 (quoting *Carrender v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983)) (alterations in original). Assumption of risk is a question for the jury "unless reasonable minds could not disagree." *Kaplan*, 126 F.3d at 225 (citing *Carrender*, 469 A.2d at 124).

In *Kaplan*, the Third Circuit, applying Pennsylvania's assumption of risk case law, found that a plaintiff did not proceed voluntarily when there is "no reasonable alternative." *Kaplan*, 126 F.3d at 227. The plaintiff in Kaplan boarded a SEPTA bus by climbing over an icy mound of snow, which a fellow passenger had warned her was icy. *Id.* The Third Circuit found that reasonable minds could disagree about whether she had a reasonable alternative–namely, walking down the block to where a path into the street was clear and then "walk[ing] a distance back towards the bus stop in an icy street with traffic." *Id.*

Here, reasonable minds could disagree whether Cheryl Cater had reasonable alternatives to crossing the icy parking lot. The option of remaining in the Starbucks for an indeterminate amount of time may not have been a reasonable alternative. Cater arguably could have simply chosen not to patronize the Starbucks, but the plaintiff in *Kaplan* could have similarly chosen not to take the bus or not to leave her home following a snowstorm. Reasonable minds could disagree whether it is a viable alternative to stop frequenting businesses in the days following winter storms. Additionally, reasonable minds could consider that Cheryl Cater did not have a reasonable alternative, given that

she crossed the parking lot in order to aid an injured person. Thus, I cannot grant summary judgment based on the doctrine of assumption of risk.

## C. Because Material Facts are in Dispute Mastropieri is not Entitled to Summary Judgment Against Starbucks

Lastly, Mastropieri argues that he was an out-of-possession landlord and he cannot be held liable for an accident on property he did not control. However, neither Starbucks' lease nor the Beer Yard's lease establishes that Mastropieri did not retain control over the common areas, including the parking lot.

"Pennsylvania law follows the general rule that a lessor of land is not liable to the lessee or to others, including business invitees, for the physical harm caused by either natural or artificial conditions on the land which existed when the land was transferred or which arise after the transfer of possession." *Deeter v. Dull Corp., Inc.*, 617 A.2d 336, 339 (Pa. Super. Ct. 1992) (citations omitted). However, "the landlord may be liable if he or she has reserved control over a defective portion of the leased premises or over a portion of the leased premises which is necessary to the safe use of the property (the 'reserved control' exception)." *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. Ct. 2007) (citations omitted).

Two issues prevent the grant of summary judgment on this ground. First, contrary to Mastropieri's assertions, the lease with Starbucks is unclear as to which party bears the responsibility for snow removal. Second, there is a genuine issue of material fact over the amount of control that Mastropieri exercised over the parking lot and whether his

actions–specifically repaving the lot–may have even contributed to the accumulation of ice.

Whether Starbucks or Mastropieri assumed a contractual duty to keep the parking lot clear of ice or snow depends on whether Mastropieri's duty to undertake "repairs, replacements, and maintenance of common areas" includes the duty to keep the parking lot free of ice and snow. The contract does not define the scope of the duties of "repair[], replacement[], and maintenance" that are required of Mastropieri. The contract does provide a list of exemplars: "the upkeep of the roof, foundation, exterior walls, interior structural walls, and all structural components of the Building and Property and structural and non-structural components of the Common Areas pursuant to Section 12." Lease at ¶ 6.2.

The removal of snow and ice cannot be described as a "repair" or a "replacement," so the issue will turn on whether the duty of "maintenance" includes snow and ice removal. The common understanding of the word "maintenance" could or could not include snow removal. The relevant definition in Black's Law Dictionary defines "maintenance" as "care and work put into property to keep it operating and productive; general repair and upkeep." Black's Law Dictionary (8th Ed. 2004). The list of exemplars provided in the lease similarly speaks of "upkeep" of generally structural components. "Maintenance" arguably could or could not include snow removal.

If a contract term is unclear, Pennsylvania courts have stated that "subsequent conduct of the parties, course of performance, is an aid to interpretation." *Herzog v.*

*Herzog*, 887 A.2d 313, 316 (Pa. Super. Ct. 2005). "If the parties to a contract have started to perform the contract and their performance manifests a common manifestation of their understanding of the prior expression of agreement, this evidence will be given great weight in determining the meaning attributed to their expressions." *Id.* (quoting John Edward Murray, Jr., Murray on Contacts, § 88F, at 424 (3rd Ed. 1990)).

Disputed material issues of fact prevent me from resolving whether the course of performance evidences a "common manifestation of their understanding." Starbucks and Mastropieri dispute why Starbucks decided to pay a snow plow service and whether Mastropieri had paid for a snow plow service in years prior. Given this dispute of fact, and the lack of clarity in the terms of the lease, I cannot conclude, as a matter of law, that Mastropieri did not have control over the parking lot and snow removal in particular.

Furthermore, Sauerbrey testified in his deposition that Mastropieri repaved a portion of the lot, which caused runoff to accumulate into a pool and then freeze. Pennsylvania courts would likely find such action sufficient to be considered control over the property, assuming as I must at the summary judgment stage that Sauerbrey's testimony may be correct. *See Juarbe v. City of Philadelphia*, 431 A.2d 1073, 1080-81 (Pa. Super. Ct. 1981) (finding that, despite the fact that the lease expressly required the tenant to maintain the property in an orderly condition, the landlord may have retained control over the property by conducting regular inspections for lease violations). Given that the lease is unclear as to who had control over snow and ice removal and the fact that Mastropieri retained some control over the parking lot, as shown by his repaving the lot, I

cannot find that undisputed facts show that Mastropieri was an out-of-possession landlord.

## III. Conclusion

For the foregoing reasons Mastropieri's motion for summary judgment against the Caters and against Starbucks is denied. An appropriate order accompanies this memorandum.