# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE CATER and CHERYL CATER, Plaintiffs, <br><br> v. <br><br> STARBUCKS CORPORATION, et al., Defendants. | Civil Action No. 07-2660 |

## MEMORANDUM

August 10, 2010                                                                                                          Pollak, J.

       Plaintiffs George Cater and Cheryl Cater filed suit in the Court of Common Pleas of Philadelphia County, alleging negligence and loss of consortium arising from a fall on the allegedly icy Starbucks parking lot (docket no. 1). The defendants were Starbucks and Paul Mastropieri, the owner of the parking lot, who leased to Starbucks the building in which Starbucks was located and which was adjacent to the parking lot (docket no. 1).

       On grounds of diversity defendants removed the suit to this court (docket no. 1). In its answer, Starbucks brought a cross-claim for indemnification and breach of contract against Mastropieri (docket no. 3). Starbucks then joined as third-party defendants the Beer Yard, which shared the parking lot with Starbucks, and Anthony Marchesani, who

1

plowed the parking lot (docket nos. 9 & 10). Marchesani then brought a claim for indemnification against Mastropieri (docket no. 20). The Caters, in an amended complaint (docket no. 30), then brought claims against the third-party defendants, Marchesani and the Beer Yard.

Several motions for summary judgment have been filed, including: Starbucks' motion for summary judgment against the Caters, based on an open, obvious, and known condition/assumption of risk (docket no. 89); Starbucks' motion for summary judgment against the Caters and Mastropieri, based on a lack of duty and for indemnification (docket no. 90); Mastropieri's motion for summary judgment on all claims against him (docket no. 88), Beer Yard's motion for summary judgment on all claims against it (docket no. 86); and Marchesani's motion for summary judgment on all claims against him (docket no. 87).

This memorandum and accompanying order address Marchesani's motion for summary judgment (docket no. 87). Plaintiffs (docket no. 96) and defendant Starbucks (docket no. 101) have responded and Marchesani has replied (docket nos. 105 & 106).

I.  **Facts**

Cheryl Cater alleges that she fell in the parking lot located at 218 East Lancaster Avenue, Wayne, Pennsylvania. The property consists of a circular building leased to Starbucks and a rectangular building leased to the Beer Yard, a retail store and beverage distributor. The property includes a common parking lot and driveway between the two

2

buildings.

In the winter of 2005, Anthony Marchesani began regularly plowing and salting the parking lot at the Wayne Starbucks located at 218 East Lancaster Avenue, in addition to performing such services for other Starbucks locations. Marchesani Exh. C, at 15 . There was not a written agreement between Marchesani and Starbucks. Starbucks Ex. A-1, at 68 (Depo. of Anthony Marchesani). Marchesani testified that "we would plow the parking lot, we would salt the parking lot with calcium chloride, shovel, snow blow, whatever type [of] snowplowing services, depending on the situation, we would provide." Marchesani Exh. C, at 43-44. Marchesani plowed the lot every time there was snow accumulation of greater than one inch. Starbucks Exh. A-1, at 69. When there was only a dusting of snow, whether Marchesani plowed or salted the parking lot would "depend on the situation." Starbucks Exh. A-1, at 16-17, 69-70. Additionally, "if there was a rain event and [Marchesani] realized that it was going to freeze, then [he] would obviously go out and salt." Starbucks Exh. A-1, at 19. Marchesani testified that he only salted when there had recently been some form of precipitation by stating that he would take care of a thaw and refreeze "if they called me, but I never had an event where there would be a thaw and refreeze." Starbucks Exh. A-1, at 29. He stated he had never inspected a property for thaw and refreeze for any of his clients. Starbucks Exh. A-1, at 74.

David Pogach, the Starbucks property manager, testified at his deposition that he did not "recall" speaking with Machesani about checking the property for the refreezing

3

of water from melted snow and ice.  Marchesani Exh. D, at 168.  Marchesani claimed that no one from Starbucks ever discussed with him problems with snow melting and refreezing.  Starbucks Exh. A-1, at 40.   Pogach was also not aware of any requirement that Marchesani monitor the parking lot for ice.  Marchesani Exh. D, at 164-65.

However, Marchesani stated that, as far as he was aware, the Starbucks employees would only be able to salt the walkways near the store and not the parking lot as "[t]hey wouldn't have enough salt to do the parking lot."  Marchesani Exh. C, at 28.  Marchesani also admitted that he was aware that water would accumulate in the parking lot.  Starbucks Exh. A-1, at 76.

Marchesani recalled plowing about sixteen inches of snow on February 12, 2006.  Starbucks Exh. A-1, at 32-33.  He did not return to the Starbucks location between February 12, 2006, and February 15, 2006, when Cheryl Cater fell.

On February 15, 2006, Cheryl Cater and her husband, George, drove to the Starbucks at 218 East Lancaster Avenue.  218 MJG's Exh. C, at 64-65 (Depo. of Cheryl Cater).  According to Cater, the night before there was "an icy rain."  *Id.* at 77.  Cheryl Cater described the ice as "all across the entire parking lot" and "continuous throughout the entire yard or lot."  *Id.* at 77, 80.  The Caters observed a woman, Libby Schwartz, lying in the middle of the parking lot.  *Id.* at 56.  The Caters stopped their car and George carried Schwartz to the back door of the Starbucks.  *Id.* at 74.

As she got out of her car, Cheryl Cater was concerned about her ability to walk

across the parking lot due to the ice. *Id.* at 81. Cheryl Cater went inside the Starbucks to where Schwartz and George Cater were located. *Id.* at 82. Cheryl Cater stayed with Schwartz until an EMT arrived. *Id.* at 83-84. At that point Schwartz asked Cheryl Cater to retrieve Schwartz's purse from her car, because it contained her medical information. *Id.* at 86-87. To reach Schwartz's car, Cheryl Cater had to again cross the parking lot where any path she chose to take would be icy. *Id.* at 87-89. In trying to reach Schwartz's car, Cheryl Cater slipped and fell in the area where Schwartz's car was located. *Id.* at 92-93.

## II  Analysis

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006). Facts are material if they "bear on an essential element of the plaintiff's claim." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)). Further, there is a genuine issue of material fact if "a reasonable jury could find in favor of the nonmoving party." *Id.*

A party seeking summary judgment carries the initial burden of informing the court of the basis for its motion and identifying the portions of the record that show that

5

there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this instance, the non-moving party would bear the burden of proof at trial. Consequently, the moving party must show that the non-moving party cannot support her case with the evidence in the record. *Celotex*, 477 U.S. at 325. To rebut, the non-moving party must identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Marchesani argues that his duty is limited to the scope of his oral contract with Starbucks. Marchesani further argues that his duties under oral contract with Starbucks, as shown by his course of performance, only required him to plow and salt the parking lot after snow storms and rainfalls that were likely to result in ice. He argues that he did not have any duty with respect to what he termed a "thaw and refreeze" in his deposition–where snow from a prior storm melts and the resulting water pools in the parking lot and freezes again as ice.

If a contract term is unclear, Pennsylvania courts have stated that "subsequent conduct of the parties, course of performance, is an aid to interpretation." *Herzog v. Herzog*, 887 A.2d 313, 316 (Pa. Super. Ct. 2005). "If the parties to a contract have started to perform the contract and their performance manifests a common manifestation

6

of their understanding of the prior expression of agreement, this evidence will be given great weight in determining the meaning attributed to their expressions." *Id.* (quoting John Edward Murray, Jr., Murray on Contacts, § 88F, at 424 (3rd Ed. 1990)).

While the focus of Starbucks opposition is that the scope of Marchesani's contract and therefore duty was unclear, I must deny summary judgment on other grounds. Even if I accept Marchesani's argument that he was only obligated to plow and salt when there had been some form of precipitation, a disputed material fact prevents him from establishing that there was not precipitation. In his deposition, Marchesani stated that "if there was a rain event and [Marchesani] realized that it was going to freeze, then [he] would obviously go out and salt." Starbucks Exh. A-1, at 19. Cheryl Cater in her deposition testified that the night before she fell there was "an icy rain." *See* Summary Judgement Motion of 218 MJG, Exh. C, at 77 (Depo. of Cheryl Cater). Thus, evidence in the record before me indicates that there may have been precipitation the night before, which, if Marchesani had reason to realize that it was going to freeze, would require him to "go out and salt."

The plaintiffs argue that Starbucks did in fact inform Marchesani of the need to salt the parking lot. However, their evidence of such a fact is an incident report from Starbucks regarding the fall of Christine Perrone, who fell approximately an hour before Cheryl Cater. *See* Plaintiff's exhibit J. Marchesani argues that statement in the incident report that "the salt guy never showed up" is inadmissible hearsay. As other disputed issues of material fact prevent me from granting Marchesani's motion for summary

7

judgment, I need not decide whether the statement would be admissible at trial.

III. **Conclusion**

For the foregoing reasons, I will deny Marchesani's motion for summary judgment against plaintiffs and against Starbucks. An appropriate order accompanies this memorandum.